GARY M. RESTAINO
United States Attorney
District of Arizona
NATHANIEL J. WALTERS
Assistant United States Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: nathaniel.walters@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>David Berry Garmarnik,<br><br>Defendant. | CR-24-08214-RM-MSA<br><br>GOVERNMENT'S APPEAL FROM MAGISTRATE JUDGE RELEASE ORDER<br><br>(Dkt. 15) |

The defendant, David Berry Garmarnik, has a significant sexual interest in children. The defendant has used Skype for nearly a decade to view and direct the rape of children in the Philippines. In this case, the United States of America, by and through its undersigned attorneys, appeals the Honorable Maria S. Aguilera's order releasing the defendant. The defendant is a severe flight risk and danger to the community, and the magistrate judge erred in releasing him. Accordingly, for the reasons set forth below, the United States respectfully requests that the Court overrule the magistrate judge and detain the defendant pending his trial.

A.     **Factual & Procedural Background**

On July 16, 2024, Homeland Security Investigations (HSI) Tucson received a request from HSI Portland, Maine, regarding the subject of a child exploitation investigation, David Berry Garmarnik, believed to be residing in Tucson, Arizona. The investigation described herein is part of an expansive case that has led to the infiltration and dismantlement of numerous international child sex trafficking organizations and

criminal rings. This growing child abuse industry involves child traffickers in the Philippines who collect viewership fees from vetted customers internationally. Paying customers then direct child traffickers to perform acts of sexual abuse on minor children in real time during private webcam interactions. Customers often then travel to the Philippines to engage in the hands-on abuse of victimized children.

The investigation related to Skype user *flashjack78*, herein referred to as the TARGET ACCOUNT, subsequently identified as the defendant. The TARGET ACCOUNT was identified during analysis of information obtained via search warrants from Skype (owned by Microsoft). Specifically, communications between a Philippine National and the TARGET ACCOUNT were indicative of child sex trafficking and possibly live streaming. The TARGET ACCOUNT had chat conversations with 11 known or suspected trafficker accounts between April 29, 2017, and September 11, 2022.

Following a subpoena to Skype/Microsoft, HSI Special Agent (SA) Chad Lakosky learned that username *flashjack78* was utilizing Internet Protocol (IP) address 72.200.123.0, which came back to Arizona. A second summons was sent to Skype/Microsoft on May 19, 2024, for information related to multiple accounts suspected of participating in livestream child sex shows, to include the TARGET ACCOUNT. Under the *flashjack78* username, the user logged in 10 times between May 5, 2024, and May 18, 2024, using IP address 72.212.100.190. A subpoena sent to Cox Communications showed the subscriber of that IP address to be the defendant with an address of 3171 North Isabel Mine Road, Tucson, Arizona 85745.

On July 17, 2024, SA Lakosky initiated subpoena requests for account holder and transaction details to prominent Money Service Business (MSB) providers for information linked to the defendant. 93 transactions were conducted via Western Union totaling $3,515. 80 of these transactions were to recipients in the Philippines that appeared to have no familial or known connection to the defendant. The most common amounts of money sent in the transactions ranged from $15 to $50, with a few transactions over that amount. This type of payment activity has been identified as indicia of suspected payment for livestream

child sexual exploitation. SA Lakosky was also able to show that the same IP address used in the Skype records were used to send Western Union money orders. World Remit Corporation showed one payment of $40 to Olongapo, Philippines, on September 2, 2015. The IP address of 72.208.136.84 was used by the sender and was also listed in the Western Union transactions for the defendant between September 4, 2015, and November 28, 2015. Finally, PayPal showed a total of $560.25 with 14 transactions going to recipients in the Philippines that appeared to have no familial or known connection to the defendant. The most common amounts of money sent in the transactions ranged from $15 to $50, with a few transactions over that amount. This type of payment activity has been identified as indicia of suspected payment for livestream child sexual exploitation.

On September 16, 2024, after obtaining a search warrant, SA Lakosky received an enormous about of data from Microsoft. Microsoft records showed that between April 23, 2017, through August 13, 2024, the TARGET ACCOUNT had exchanged 104,21 messages, 1,629 medial files, and 1,482 call records. Hundreds of chat conversations containing suspected activity indicative of the exchange of child sexual abuse material (CSAM) and livestream child sexual abuse shows was present.

On October 22, 2024, at approximately 6:04am, HSI SAs from Tucson executed a search warrant at the defendant's residence. At approximately 6:27am, SAs arrested the defendant on a complaint, and during a post-*Miranda* interview, the defendant made a full confession. Specifically:

- When asked why he believed agents would be at his house, the defendant stated he had "no idea";
- When asked if he had ever downloaded or possessed CSAM, the defendant admitted he had not purchased it, but had downloaded and deleted it;
- The defendant stated he had done it "a couple of times" and said that he downloaded the material after "just seeing it on the web";
- When asked about his Skype account, the defendant stated he deleted his Skype account but couldn't remember when he deleted it or his username;

- The defendant claimed to have had his Skype account for approximately one year;
- When confronted with inconsistencies, the defendant stated he was talking to "a lady from the Philippines" and said he would send money because she had problems;
- When asked about live sex shows with children, the defendant admitted he had done about 100, but that he had not done one of those in a while;
- The defendant confirmed his Skype account was *flashjack78*;
- The defendant denied being 'hands on' with a child;
- The defendant said he's never traveled to the Philippines.

On October 22, 2024, HSI SAs arrested the defendant on a complaint charging him with one count of Production of Child Pornography in violation of Title 18, United States Code, Sections 2251(a) & (e). Dkt. 1. On October 23, 2024, at the defendant's Initial Appearance, the Court set a detention hearing for October 30, 2024. Dkt. 2. After defense counsel successfully motioned to accelerate the detention hearing to October 29, 2024, dkt. 6, a further detention hearing was scheduled for November 6, 2024. Dkt. 9. After the defendant retained counsel, his detention hearing was continued to November 20, 2024. Dkt. 13. On November 20, 2024, the United States argued that the defendant should be detained as both a risk of flight and a danger to the community. Over the United States' objection and Pretrial Service's recommendation, the Honorable Maria S. Aguilera released the defendant. Dkt. 15. The United States subsequently requested, and was granted, a stay to appeal that decision. Dkt. 15.

The same day, the United States obtained a 45-count indictment against the defendant charging him with 20 counts of Attempted Production of Child Pornography in violation of Title 18, United States Code, Sections 2251(c) & (e), 20 counts of Attempted Coercion and Enticement in violation of Title 18, United States Code, Section 2422(b), and 5 counts of Receipt of Child Pornography in violation of Title 18, United States Code, Sections 2252(a)(2) & (b)(1). Dkt. 18.

B. **Law & Argument**

1. *The Factors in Section 3142(g) Still Require Detention.*

Title 18, United States Code, Section 3142(g) requires a Court to consider several factors to determine whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." A person facing trial is entitled to release under the least restrictive conditions or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(c); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor. *Id.* at 1403, 1405.

In some instances, however, the United States may move for detention. As the Supreme Court has stated, "The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987) (citing 18 U.S.C. § 3142(f)). The United States bears the burden of showing that the defendant poses a flight risk by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406-07.

The weight of the evidence is the least important of these factors. *Id.* at 1408. However, the nature of the offense and the evidence of guilt are relevant "in terms of the likelihood that the person will fail to appear or will pose a danger to the community." *United States v. Cardenas*, 784 F.2d 937, 939 (9th Cir. 1986) (citing *Motamedi*, 767 F.2d at 1408).

Based on the factors above, the magistrate judge erred in releasing the defendant because there is no condition or combination of conditions that would reasonably assure the defendant's appearance at court or to minimize his severe risk to the community.

a. <u>The nature and circumstances of the offense charged</u>:

Here, the United States has charged the defendant with 20 counts of Attempted Production of Child Pornography in violation of Title 18, United States Code, Sections 2251(c) & (e), 20 counts of Attempted Coercion and Enticement in violation of Title 18, United States Code, Section 2422(b), and 5 counts of Receipt of Child Pornography in violation of Title 18, United States Code, Sections 2252(a)(2) & (b)(1). Dkt. 18. Attempted Production of Child Pornography carries a mandatory minimum sentence of 15 years in prison, Attempted Coercion and Enticement carries a mandatory minimum sentence of 10 years in prison, and Receipt of Child Pornography carries a mandatory minimum sentence of 5 years in prison. In addition, these charges raise a presumption of detention as to both risk of flight and dangerousness. 18 U.S.C. § 3142(e)(3)(E). As such, the nature and circumstances of this offense weigh in favor of detention.

b. <u>The weight of the evidence against the person</u>:

Although the Ninth Circuit has held this is the least important factor, *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985), that does not mean the Court should ignore the evidence against the defendant. Here, the defendant communicated with dozens of traffickers in the Philippines for almost a decade. During these communications, he would view and direct the rape of dozens of children ranging from three to fifteen years old. All his conversations with the traffickers were memorialized in writing, and law enforcement obtained those conversations using legal processes. Although HSI SAs did were not able to obtain the footage of the rapes – because they were conducted live in real-time – the chats show that the shows took place. For example, on May 6, 2018, the defendant had a conversation with a trafficker and agreed to do a live show with a 10-year-old female. During the call, the defendant gave instructions such as "naked," "spread," and "hair behind head." The defendant also asked if the 10-year-old liked "penis," and asked the trafficker if he could meet the girl in person. When the trafficker responded in the affirmative, the defendant asked if the trafficker would "be ok with me cumming in her

mouth or on face." When the trafficker again answered in the affirmative, the defendant stated, "I like her," and asked the trafficker if the child would perform oral sex on a dog that was near the camera. When the trafficker denied that request, the defendant asked, "can she finger her butt," and directed the child to "go from under the leg." The defendant asked the trafficker how "deep" the child could go and then directed the child to "spread her pussy lips" and "play with clit." This conversation is similar to many other conversations in the defendant's Skype chats. The evidence against the defendant is sufficient to sustain a conviction at trial, and while the Court may give this factor little weight, it nonetheless favors detention.

   c. <u>The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings:</u>

  The defendant is a 46-year-old United States Citizen and has lived in Tucson for 26 years. Dkt. 5 at 2. In addition, it appears the defendant has the support of his family and has no known criminal history. Dkt. 5 at 2,5; Dkt. 8 at 1-2. However, even though the defendant has no criminal history, the defendant has been engaging in the charged conduct for nearly a decade or more. Moreover, the defendant has significant mental health concerns. The defendant admits he has struggled with mental health issues for nearly two decades. Dkt. 5 at 3. In addition, the defendant has past and current suicidal ideations. Dkt. 5 at 3; Dkt. 14 at 1-2. Specifically, on October 29, 2024, Pretrial Services spoke to the case agent, the defendant made statements to him such as, "My life is over!" "I wish you guys would just kill me!" and "I was going to kill myself last week, but I didn't. I don't know why I didn't!" Dkt. 14 at 1. Because of these mental health issues and suicidal ideations, Pretrial Services found the defendant a risk of nonappearance, and the United States agrees. Dkt. 14 at 2. In this case, the defendant's family ties and length of residence in the community do not outweigh the longstanding criminal conduct and the defendant's mental health issues. As such, these factors also weigh in favor of detention.

d. <u>Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law</u>:

The Pretrial Services report does not show the defendant was on release or probation at the time of the offense. Therefore, this factor weighs in favor of release.

e. <u>The nature and seriousness of the danger to any person or the community that would be posed by the person's release</u>:

The Court may reasonably conclude that the defendant's pre-trial release would pose a severe risk and danger to the community based solely on the underlying offense's nature, circumstances, and facts. In addition, the Court may also reasonably conclude the defendant is a danger based on his mental health concerns and suicidal ideations. Here, the defendant participated in, and directed, the rape of dozens of children over a span of nearly a decade. Attempted Production of Child Pornography, Attempted Enticement and Coercion, and Receipt of Child Pornography are all crimes of violence, and the Court may find that the defendant poses a risk to the community based on the charges alone. *See* 18 U.S.C. § 3156(a)(4)(C). The defendant has a severe and undoubtedly innate sexual interest in children, and there is no condition or combination of conditions that can reasonably assure the safety of the community if the defendant were released. This is especially true for children in this community, in the United States, and internationally. Finally, in his chats with the traffickers in the Philippines, the defendant alluded to, on several occasions, his desire to travel to the Philippines and engage in sexual acts with the children.

This factor also weighs in favor of the defendant's continued detention.

C. <u>Conclusion</u>

In conclusion, no condition or combination of conditions can reasonably assure the defendant's appearance in Court or to protect the safety of the community. The factors in Section 3142(g) overwhelmingly favor detention, and therefore, the United States

| | |
|---|---|
| 1 | respectfully requests that this Court grant its appeal and detain the defendant pending trial. |
| 3 | Respectfully submitted this 2nd day of December 2024. |

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Nathaniel J. Walters*

NATHANIEL J. WALTERS
Assistant United States Attorney

Copy of the preceding served electronically or by other means this 2nd day of December 2024 to:

All ECF Participants